# EXHIBIT "1"

Electronically FILED by Superior Court of California, County of Los Angeles on 07/20/2020 04:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams,Deputy Clerk
Case 2:20-cv-09267-RGK-KS   Document 1-1   Filed 10/08/20   Page 2 of 13   Page ID #:9
20STCV27271
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Rupert Byrdsong

Laura Sasaki, Esq. (SBN 187788)
ARENDSEN BRADDOCK LLP
1245 Island Avenue
San Diego, California 92101
Direct: 619.501-3619
Fax:    619.923-3727

Attorneys for Plaintiff Maria Elvira Quintanilla Cebreros

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARIA ELVIRA QUINTANILLA CEBREROS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; JOSEPH CRONIN; MICHELLE DURAZO; and DOES 1 through 25, Inclusive,<br><br>Defendants. | CASE NO.  20STCV27271<br><br>**COMPLAINT FOR:**<br><br>**(1) FAILURE TO PERFORM MANDATORY DUTY**<br><br>*(2)* **CIVIL RIGHTS, 42 U.S.C. §1983**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MARIA ELIVIRA QUINTANILLA CEBREROS, by and through her counsel, alleges as follows:

## PARTIES

1. Plaintiff MARIA ELVIRA QUINTANILLA CEBREROS (hereinafter "Plaintiff") is a female individual, and resident of Tijuana, Baja California, Mexico.

2. Plaintiff is informed and believes that Defendant COUNTY OF LOS ANGELES. (hereinafter "COLA") is, and at all relevant times alleged herein was, a public entity organized and existing in the State of California. Defendant COLA is, and at all relevant times alleged herein was, responsible and liable for the acts and omissions of its municipal department, County of Los Angeles, Department of Coroner ("DEPARTMENT OF CORONER").

////

1
COMPLAINT

3. Plaintiff is informed and believes that Defendant JOSEPH CRONIN (hereinafter "CRONIN") is, and at all relevant times alleged herein was, an individual employed by Defendant COLA as an Investigator for the DEPARTMENT OF CORONER.

4. Plaintiff is informed and believes that Defendant MICHELLE DURAZO (hereinafter "DURAZO") is, and at all relevant times alleged herein was, an individual employed by Defendant COLA as a Deputy Coroner for the DEPARTMENT OF CORONER.

5. Plaintiff is informed and believes that Defendants Does 1 through 25 are, and at all relevant times alleged herein were, responsible, in some manner, for the acts, omissions, events, and occurrences alleged herein.

6. Plaintiff is informed and believes that, at all relevant times alleged herein, Defendants Does 1 through 25 were officers, directors, councilmembers, employees, contractors, agents, representatives, subsidiaries, departments, divisions, or other affiliated individuals or entities of Defendants COLA, CRONIN, DURAZO, and/or Does 1 through 25, acting within the scope and purpose of such employment or agency, and with the power and authority vested in them, or ratification, endorsement, or approval of the conduct with respect to the events and happenings alleged herein by Defendants COLA, CRONIN, DURAZO, and/or Does 1 through 25.

7. Plaintiff is informed and believes that Defendant Does 1 through 25 are legally responsible for the events and happenings alleged herein, and legally and proximately caused or contributed to the injuries and damages that she suffered from the alleged events and happenings. Plaintiff does not know the true names and capacities of Defendants sued as Does 1 through 25, and therefore sues them by such fictitious names. Plaintiff will amend her complaint to insert their true names and capacities when ascertained.

**JURISDICTION AND VENUE**

8. This Court has personal jurisdiction over Defendants on the basis that Defendants are doing business in and/or residents of the State of California.

9. This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to Article VI, §10 of the California Constitution, California Code of Civil Procedure §410.10, on the basis that this is a civil action in which the matter in controversy, exclusive of

1 interest, exceeds twenty-five thousand and dollars ($25,000.00), and because each cause of action
2 asserted herein arises under the laws of the State of California or is subject to adjudication in the
3 courts of the State of California.  No part of this complaint is wholly preempted by federal law or
4 challenges conduct within the exclusive domain of any federal agency, and adjudication of the claims
5 has not been statutorily assigned to any other court of jurisdiction.

6     10.     Venue is proper in this Court in accordance with California Code of Civil Procedure
7 §395(a) on the basis that the events and occurrences alleged herein took place within the County of
8 Los Angeles, and that all defendants are located in the County of Los Angeles.

## GENERAL ALLEGATIONS

10     11.     Plaintiff is the mother of Jesus Fabricio Sanchez Cebreros ("Jesus"). Jesus lived with
11 Plaintiff in Tijuana. He was a kind, dedicated, and attentive son.

12     12.     Jesus often crossed the border to visit family, including his young son in San Diego
13 County, and friends who lived in the United States. Jesus had a B1/B2 Visa/Border Crossing Card
14 which allowed him to legally enter into the United States. Plaintiff is informed and believes that
15 Department of Homeland Security performs a thorough background check and interview before
16 issuing a B1/B2 Visa/Border Crossing Card.

17     13.     On or about May 20, 2019, Jesus informed Plaintiff that he would be staying with a
18 friend for a few days in the United States.

19     14.     Plaintiff is informed and believes that on June 10, 2019, an off-duty officer with the
20 Los Angeles Police Department noticed a black trash bag on the south side of the eastbound Interstate
21 60 at northbound Interstate 605 in the City of Industry. The officer pulled over to investigate. As he
22 approached the bag, he noticed a foul odor coming from the bag. He then called 911. A California
23 Highway Patrol Officer responded.

24     15.     As the California Highway Patrol Officer approached the bag, he observed a
25 decomposed hand protruding from the bag. The body had been wrapped in black plastic trash bags.
26 The Officer contacted the Los Angeles County Sheriff's Department Homicide Division and the
27 DEPARTMENT OF CORONER.

28     16.     Plaintiff is informed and believes that Defendant CRONIN, an investigator with

DEPARTMENT OF CORONER, inspected the body while at the scene. The death was determined to have been a homicide due to multiple stab wounds.

17. Plaintiff is informed and believes that the Los Angeles County Sheriff's Department Homicide Division and DEPARTMENT OF CORONER recovered various items of evidence at the scene. These items included a United States of America B1/B2 Visa/Border Crossing Card, a Mexico Instituto Nacional Electoral Card, a Driver's License, a Mexican Passport, and an Identification Card for the Instituto Radiologico Del Noroeste. The Instituto Nacional Electoral Card included a home address in Tijuana. The Driver's License identified the same home address and a telephone number.

18. On or about June 11, 2019, the DEPARTMENT OF CORONER was asked to perform a 24-hour post-mortem examination by Detectives M. Zuniga and R. Martindale of the Los Angeles County Sheriff's Department Homicide Division.

19. Defendant CRONIN's Case Report of June 11, 2019 identified the decedent as "Sanchez Cebreros, Jesus Fabricio," with a "Date of Birth" of "12/25/1985." The "Next of Kin" was listed as "Elvira Cebreros" in "Tijuana," Mexico. She was identified as his "Mother." Her phone number was stated on the Case Report. However, Defendant CRONIN's Narrative to the Case Report of June 11, 2019 falsely reported that "next-of-kin has not been identified / located at time of report completion."

20. On or about July 26, 2019, Defendant DURAZO, a deputy coroner with the DEPARTMENT OF CORONER, completed a Death Certificate for "Jesus Fabricio Sanchez-Cebreros." The Death Certificate incorrectly identified his "Birth State/Foreign Country" as "Guatemalan." His "Date of Birth" was wrongly reported as "07/15/1959." Although Plaintiff's name appeared on Defendant CRONIN's Case Report as decedent's "Mother," Defendant DURAZO falsely reported that the "Name of Mother/Parent" was "Unknown."

21. According to the Death Certificate, the DEPARTMENT OF CORONER authorized Jesus' body to be cremated on or about July 26, 2019. His body was released to and/or cremated by the Los Angeles County Cremation Cemetery on or about July 30, 2019.

22. Shortly after Jesus left for the United States, Plaintiff began calling and sending text messages to her son. She did not hear back from him. It was not like him to not call or text her back.

Plaintiff was extremely worried and distraught that something horrible may have happened to her son.

23. On or about June 12, 2019, Plaintiff traveled into San Diego to report her son as missing to the San Diego Police Department. She was informed they did not find any matches for her son in their search of unidentified males found in Southern California.

24. Plaintiff tirelessly began searching for her son. She met with the Mexican Consulate. She launched a social media campaign. On or about July 31, 2019, Plaintiff travelled to Los Angeles to inquire about her son's whereabouts with the Los Angeles Police Department. She was told there were no records that matched the description of her missing son.

25. In late August 2019, Plaintiff learned from a response to her social media campaign that her son had died and was in the custody of the DEPARTMENT OF CORONER.

26. On September 7, 2019, Plaintiff travelled to Los Angeles County to meet with the DEPARTMENT OF CORONER. The office confirmed that her son had died. She was provided with his personal effects, which included multiple identification cards that showed her son's name, date of birth, address, and telephone number. She was also provided with a copy of the Death Certificate which showed that her son had been cremated on July 30, 2019.

27. Plaintiff is a devout Roman Catholic. Her religious and cultural belief systems include a strong conviction that the bodies of loved ones must be buried in a cemetery near the family. It is against the tenets of her faith to cremate a loved one. Thus, the disposition of the bodies of lost loved ones is an extremely important emotional catharsis that dates back for generations for Plaintiff.

28. Defendants' failure to notify Plaintiff of the death of her son and to allow her to dictate the terms of his disposition and final resting place has been emotionally devastating to Plaintiff. Plaintiff was robbed of her right to have her beloved son buried in a cemetery near her home in Tijuana. She was not able to give him a proper ceremony or burial as required by her religious beliefs. She cannot visit his remains. Due to her religious and cultural beliefs regarding cremation, Plaintiff struggles daily with the thought that her son may not have made it to his maker. She agonizes over whether she will see him in the afterlife. Her despair is debilitating. The emotional and mental pain is unbearable.

////

# FIRST CAUSE OF ACTION

## BREACH OF MANDATORY DUTY

## AGAINST ALL DEFENDANTS

**[California Government Code §§ 815.6, 27471(a)]**

29. Plaintiff incorporates herein by this reference each and every allegation set forth in this Complaint.

30. California Government Code §27471(a) states: "Whenever the coroner takes custody of a dead body pursuant to law, he or she shall make a reasonable attempt to locate the family."

31. California Government Code §7200 states: "Every head of a public institution, city or county undertaker, or state, county, or city officer having charge or control of remains to be interred at public expense shall use due diligence to notify the relatives of the decedent."

32. In accordance with these statutes, Defendants are under a mandatory duty to exercise reasonable diligence to locate and contact a decedent's family before disposing of the remains of the decedent's body.

33. The statutes are designed to protect the family's right to control the disposition of the remains of a lost family member. Thus, the statutes are intended to protect against the kind of risk suffered by Plaintiff.

34. California Government Code §7100(a) states: "The right to control the disposition of the remains of deceased person, the location and conditions of interment, and arrangements for funeral goods and services to be provided," and "the duty of disposition and the liability for the reasonable cost for disposition of the remains devolves upon … (4) the surviving competent parent or parents of the decedent."

35. Plaintiff was the surviving parent for Jesus. Jesus was not married. He did not have adult children. He did not have a power of attorney for health care.

36. On or about June 26, 2019, Defendants released and transferred Jesus' body to the Los Angeles County Cremation Cemetery. Although Plaintiff's name, address, and telephone number were available to Defendants, no effort was made to notify her of her son's death. She was not given an opportunity to control the disposition of her son's body before it was cremated at Defendant

COLA's Cremation Cemetery.

37. Defendants violated their statutory duties by failing to notify Plaintiff of the death of her son, and by interfering with her right to control the disposition of her son's body, location and conditions of interment, and funeral and burial arrangements.

38. Defendants' failure to perform the mandatory duties under Government Code §27471(a) and §7200 was a substantial factor in causing the harm and injury to Plaintiff.

39. As a proximate result of Defendants' conduct, Plaintiff has employed and continues to employ physicians, and other health care providers to examine, treat, and care for her, and has incurred and continues to incur medical and incidental expenses.

40. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer financial damage and hardship, past and future lost earnings, employment benefits, opportunities, and experience, and other special and compensatory damages, along with prejudgment interest.

41. As a further proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, physical pain, mental suffering, loss of enjoyment of life, inconvenience, embarrassment, and other non-economic losses.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

## AGAINST CRONIN, DURAZO, and DOES 1 through 15

### [Fourteenth Amendment Substantive Due Process]

42. Plaintiff incorporates herein by this reference each and every allegation set forth in this Complaint.

43. Defendants CRONIN, DURAZO, and DOES 1 through 15 were acting under the color of law in their official capacities and in the course and scope of their employment and official duties with, or approval, authority, and/or ratification by Defendants COLA and/or DOES 16 through 25.

44. The Fourteenth Amendment of the Constitution of the United States of America prohibits states from depriving "any person of life, liberty, or property, without due process of law."

45. As Jesus' surviving mother, Plaintiff had an exclusive and legitimate claim of entitlement to possess and control the remains of her son's body for burial and other lawful disposition.

46. On or about July 26, 2019, Defendants cremated Jesus' body without providing Plaintiff the opportunity to exercise her right to possess and control the manner and location for the final disposition of her son's body.

47. Defendants CRONIN, DURAZO, and DOES 1 through 15, intentionally, maliciously, recklessly, and with deliberate indifference failed to act within the requirements of the law, their department policies and customs, and/or standards for coroner departments by, among other acts and omissions, failing to notify Plaintiff of her son's death, and interfering with her right to possess and control the disposition of her son's body, location and conditions of interment, and funeral and burial arrangements.

48. Defendants CRONIN, DURAZO, and DOES 1 through 15 violated Plaintiff's substantive due process rights and interest in the remains of her son under the Fourteenth Amendment of the United States Constitution.

49. Defendants CRONIN, DURAZO, and DOES 1 through 15's conduct was performed knowingly and without just cause, proper reason, or authority in deliberate indifference to Plaintiff's rights under the under the Fourteenth Amendment.

50. Defendants CRONIN, DURAZO, and DOES 1 through 15's conduct was a substantial factor in causing the harm and injury to Plaintiff.

51. As a proximate result of Defendants' conduct, Plaintiff has employed and continues to employ physicians, and other health care providers to examine, treat, and care for her, and has incurred and continues to incur medical and incidental expenses.

52. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer financial damage and hardship, past and future lost earnings, employment benefits, opportunities, and experience, and other special and compensatory damages, along with prejudgment interest.

53. As a further proximate result of Defendants' conduct, Plaintiff has suffered and

continues to suffer severe emotional distress, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, physical pain, mental suffering, loss of enjoyment of life, inconvenience, embarrassment, and other non-economic losses.

54. As a further proximate result of Defendants' conduct, Plaintiff is entitled to statutory remedies, which includes but is not limited to attorney's fees and prejudgment interest.

## THIRD CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

### AGAINST COLA and DOES 16 through 25

### [Monell Claim]

55. Plaintiff incorporates herein by this reference each and every allegation set forth in this Complaint.

56. Defendant COLA and DOES 16 through 25 maintained official policies and/or customs relating to, among others, notification to family and relatives of the death of decedents that they are required by law to investigate the cause of death, the preparation of reports and death certificates, and the hiring, training, supervision, and discipline of investigators and coroners, which were officially adopted, promulgated, authorized, approved, and/or ratified, or were so commonplace, longstanding, well-settled, and widespread as to constitute standard operating procedures or customs that were fairly representative of municipal policies, that they knew, or in the exercise of reasonable diligence should have known, allowed, permitted, encouraged, promoted, and endorsed a deliberate, reckless, or callous indifference to the statutory and constitutional rights of family members of decedents.

57. Defendants COLA and DOES 16 through 25 knew, or in the exercise of reasonable diligence should have known, that officers of Defendant COLA, including Defendants CRONIN, DURAZO, and DOES 1 through 15, relied on the policies and customs of Defendant COLA in the performance of their work in the DEPARTMENT OF CORONER.

58. Defendants COLA and DOES 16 through 25 knew, or in the exercise of reasonable diligence should have known, that because of a pattern of similar violations, the obvious nature of the policies and customs, inadequacy of the training or training programs, and/or insufficiency or

defective nature of the hiring, supervision, investigation, and/or discipline of the investigators and coroners, Defendants CRONIN, DURAZO, and DOES 1 through 15, were allowed, permitted, encouraged, promoted, and endorsed to act in deliberate, reckless, or callous indifference to the statutory and constitution rights of the public, which included Plaintiff.

59. Defendants COLA and DOES 16 through 25 knew, or in the exercise of reasonable diligence should have known, that their official policies and/or customs and/or inadequate, insufficient, or defective training, training programs, hiring, supervision, investigation, and discipline of the investigators and coroners were a moving force behind the deprivation and violation of statutory and constitutional rights of members of the public, which included Plaintiff, by investigators and coroners of Defendant COLA, inclusive of Defendants CRONIN, DURAZO, and DOES 1 through 15.

60. On or about July 26, 2019, Defendants CRONIN, DURAZO, and DOES 1 through 15, who were acting under the color of law in their official capacity, and in the course and scope of their employment and official duties with, or approval, authority, and/or ratification by Defendants COLA and/or DOES 16 through 25, intentionally and/or recklessly violated the statutory and constitutional rights of Plaintiff by, among other acts, their failure to notify her of her son's death despite their knowledge of her name, address, and phone number, and the incomplete, inaccurate, and false statements in their reporting of the death in the Case Report, Narrative, and Death Certificate.

61. Plaintiff is informed and believes that, at all relevant times alleged herein, Defendants CRONIN, DURAZO, and DOES 1 through 15 acted because of, in accordance with, and/or in reliance on official policies and/or customs of and/or based on the inadequate training or training programs, and/or insufficient or defective hiring, supervision, investigation, and/or discipline by Defendants COLA and DOES 16 through 25, when they deprived or violated Plaintiff's statutory and constitutional rights, including the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

62. The official policies and/or customs of, inadequate training or training programs, and/or insufficient or defective hiring, supervision, investigation, and/or discipline by Defendants COLA and DOES 16 through 25 were the cause of the constitutional violations and harm and injury

to Plaintiff.

63. As a proximate result of Defendants' conduct, Plaintiff has employed and continues to employ physicians, and other health care providers to examine, treat, and care for her, and has incurred and continues to incur medical and incidental expenses.

64. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer financial damage and hardship, past and future lost earnings, employment benefits, opportunities, and experience, and other special and compensatory damages, along with prejudgment interest.

65. As a further proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, physical pain, mental suffering, loss of enjoyment of life, inconvenience, embarrassment, and other non-economic losses.

66. As a further proximate result of Defendants' conduct, Plaintiff is entitled to statutory remedies, which includes but is not limited to attorney's fees and prejudgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each of the Defendants as follows:

1. For such general, special, and compensatory damages in amounts to be proven at the time of trial;
2. For statutory attorney fees;
3. For pre-judgment interest at the prevailing statutory rates;
4. For costs of suit;
5. For injunctive relief; and
6. For such other relief as the Court may deem proper.

////
////
////
////
////

11
COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for the causes of action set forth above.

Dated:  July 20, 2020

**ARENDSEN BRADDOCK LLP**

By: _____
LAURA SASAKI, ESQ.
Attorneys for Plaintiff